FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 14 2009 10:35AM

Stephan Harris, Clerk
Casper

AO 243
REV 6/82

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District U.S. District Court of Wyoming | |
|---|---|---|
| Name of Movant Alfonso - Jesus Legarda | Prisoner No. #09532-091 | Docket No. # 05-CR-104-WJD |
| Place of Confinement F.C.I. Englewood | | |

(include name upon which convicted)

UNITED STATES OF AMERICA    V.    Alfonso-Jesus Legarda

(full name of movant)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack __United States District Court of Wyoming (Casper)__

2. Date of judgment of conviction __March 20, 2008__

3. Length of sentence __210 Months imprisonment, 5 years supervised release__

4. Nature of offense involved (all counts) __21 U.S.C. 841(a)(1), 841(b)(1)(a) and 846__

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   __N/A__

6. Kind of trial: (Check one)
   (a) Jury ☐
   (b) Judge only ☒

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 243
REV 6/82

9.  If you did appeal, answer the following.

(a) Name of court U.S. Court of Appeals for the 10th circuit

(b) Result  Appeal Denied

(c) Date of result  July 27, 2009

10.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11.  If your answer to 10 was "yes," give the following information:

(a) (1)  Name of court  N/A

(2)  Nature of proceeding  N/A

(3)  Grounds raised  N/A

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5)  Result  N/A

(6)  Date of result  N/A

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court  N/A

(2)  Nature of proceeding  N/A

(3)  Grounds raised  N/A

AO 243
REV 6/82

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result _____ N/A _____

(6) Date of result _____ N/A _____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court _____ N/A _____

(2) Nature of proceeding _____ N/A _____

(3) Grounds raised _____ N/A _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result _____ N/A _____

(6) Date of Result _____ N/A _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1) First petition, etc.      Yes ☐ No ☒

(2) Second petition, etc.     Yes ☐ No ☒

(3) Third petition, etc.      Yes ☐ No ☒

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

~~This is Petitioners first time/timely Post Conviction motion~~

~~Pursuant to 28 U.S.C. 2255~~ _____

_____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession

AO 243
REV 6/82

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e)  Conviction obtained by a violation of the privilege against self-incrimination.
(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g)  Conviction obtained by a violation of the protection against double jeopardy
(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i)  Denial of effective assistance of counsel.
(j)  Denial of right of appeal.

A.  Ground one: _____ See: Attached Brief and memorandum of _____
_____ law in support of. _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____
_____ See: Attached Brief and memorandum of _____
_____ law in support of. _____
_____
_____
_____
_____

B.  Ground two: _____ See: Attached Brief and momorandum of _____
_____ law in support of. _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____
_____ See: Attached Brief and memorandum of _____
_____ law in support of. _____
_____
_____
_____

C.  Ground three: _____ See: Attached Brief and momorandum of _____
_____ law in support of. _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____
_____ See: Attached Brief and momorandum of _____
_____ law in support of. _____
_____
_____

AO 243
REV 6/82

D. Ground four:   See: Attached Brief and memorandum of
law in support of.

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

This is Petitioners first time/timely file post conviction
motion, pursuant to 28 U.S.C. 2255.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing    N/A _____

(b) At arraignment and plea   N/A _____

(c) At trial    N/A _____

(d) At sentencing   N/A _____

AO 243
REV 6/82

(e) On appeal _____ N/A _____

(f) In any post-conviction proceeding ___ N/A _____

(g) On appeal from any adverse ruling in a post-conviction proceeding ___ N/A _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____ N/A _____

(b) Give date and length of the above sentence: ___ N/A _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☒

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

10-9-09
(date)

_____
Signature of Movant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

(CASPER)

| | | |
|---|---|---|
| Alfonso Jesus-Legarda, Petitioner, | ( ( ( ( ( | Criminal Case No. 05-CR-104-WJD |
| v. | ( ( ( ( | |
| United States of America, Respondent, | ( ( ( ( | Judge Downes |

## Motion For Post Conviction Relief

Pursuant To 28 U.S.C. 2255, To Vacate , Set Aside Sentence

Comes now, Alfonso Jesus-Legarda, acting in "Pro Se" status, pursuant to "Hanes v.Kerner", and the directives set forth by the United States Supreme Court. Thus, the petitioner avers the following in support of..

Date 10-9-09

Respectfully Submitted,

Alfonso Jesus-Legarda
Reg. NO 09531-091
Federal Correctional
Institution Englewood
9595 West Quincy Ave.
Littleton, CO 80123

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

(CASPER)

| | | |
|---|---|---|
| Alfonso Jesus-Legarda,<br>   Plaintiff/Petitioner, | ( <br> ( <br> ( <br> ( <br> ( | Criminal Case<br>No. 05-CR-104-WJD |
| v. | ( <br> ( <br> ( <br> ( | |
| United States of America,<br>   Defendant/ Respondent, | ( <br> ( <br> ( | Judge Downes |

## Motion For Appointment Of Counsel

Plaintiff/Petitioner, Alfonso Jesus-Legarda, pursuant to 28 U.S.C. 1915, requests this Court to appoint counsel to represent him in the above-styled case for the folloing reasons:

1.   Plaintiff/Petitioner is not able to afford counsel.

2.   The issues involved in this case are complex.

3.   The prison limits the hours that Plaintiff/ Petitioner may have access to the prison library and the law materials contained there are very limited.

4.   Plaintiff/ Petitioner has a limited knowledge of law.

5.   The ends of justice would best be served in this case if an attorney was appointed to represent the Plaintiff/Petitioner.

Dare 10-9-09                      Respectfully Submitted,

Alfonso Jesus-Legarda
Reg. NO 09-531-091
Federal Correctional
Institution Englewood
9595 West Quincy Ave.
Littleton, CO 80123

### STATEMENT OF FACTS

1.   On May 19, 2005, a Federal Grand Jury in the District of Wyoming returned a five(5) count Indictment charging Jesus Alfonso Legarda ("Legarda") in count 1 with Conspiracy to Possess with intent to Distribute 500 grams or more of methaphetamine in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(A) and 846 (Doc. No. 1, Tab.2)

2.   On December 7, 2006, Legarda entered a plea of guilty to count 1 of the Indictment. (Doc.No.190) pursuant to a written plea Agreeement. In exchange for pleading guilty to Count -1, the government agreed to recomend all three levels for Legarda's Acceptance of Responsibilty, not oppose Legarda's request for a designation to a BOP facility located nearest to his family and a sentence at the low end of the applicable guideline range.

3.   On March 20, 2008, the District Court imposed a sentence of 210 months imprisonment, a 5 year supervised release, a $1,000.00 fine, no restitution and a Mandatory Special Assessment Fee of $100.00 (Doc. No. 243, Tab_____).

4.   On March 27, 2008, a timely Notice of Appeal was filed (Doc. No. 245, Tab_____).

5.   Thus, on July 27, 2009, the Circuit Court of Appeals dismissed the Petitioners Appeal, i.e. see: Attached Exhibit, and hence, now the Petitioner files a timely motion for Post Conviction, pursuant to 28 U.S.C. 2255.

## SUMMARY OF THE CASE

1.   In June 2004, the Agents of Wyoming Division of Criminal Investigation
("DCI") in Riverton, Wyoming, interviewed Cleo Cooper ("Cooper") after
he was arrested and found in possession of approximately one-half
ounce of methamphetamine (15 grams) and $2,895) in drug proceeds.

2.   Cooper was subsequently interviewed by Sheriff's Deputies following
his arrest. During the interview, Cooper acknowledged that he was
a dealer of methamphetamine and that his source was Jesus Legarda.
Cooper advised that he had received a total of five to six ounces
of Methamphetamine from Legarda during the last two months. Further,
that Dexter Duran, a teenage boy, Brandon LaForme and Hector Gonzalez
Gutierrez sold methamphetamine on behalf of Legarda. Cooper stated
that when he contacts Legarda, Legarda referes to one ounce of methamphetamine
as "a bucket of paint." During the interview, Cooper provided Agents
with Legarda's cellular telephone number. Cooper also stated that he
was in debt to Legarda for about $1,200 for previously fronted methamphetamine
The information provided by Cooper in several interviews ultimately
led to the issuance of a court authorized wiretap on Legarda's cell
phone. As such, begining on February 14, 2005, for the next 30 days,
DCI and DEA Agents monitored and recorded the telephone activities
of Legarda. From the intercepted calls, though interviews and surveilance,
Agents learned that Legarda was obtaining methamphetamine and cocaine
from various sources in Colorado, Utah and Rock Springs, Wyoming.
They further learned how and by whom the drugs were distributed, the
people involved, where the drugs were stored and the way payment for
the drugs was made.

This led to interviews and wire intercepts of various other individuals involved in the conspiracy, wherein a case was solidly built against Legarda. During the course of the investigation, Agents learned that Legarda stored drugs at the residence of Legarda's cousin, Claudia Hermosillo, Hermosillo was the daughter of Samuel Legarda who owned Laris Auto Supply in Riverton, Wyoming. Hermosillo aided her father in his business and Jesus Legarda regularly frequented the business. As such, Agents had authorized intercept orders for Hermosillo's cell phone and the Laris Auto Supply. During the course of the telephone intercepts, the Agents intercepted numerous incriminating phone calls which revealed that various quanties of methamphetamine were from various sources. The court authorized intercepts for Hermosillo and Laris Auto Supply began on March 18, 2005 and expired after an extension on May 17, 2005.

3.  On May 19, 2005, a Federal Grand Jury in the District of Wyoming returned a five (5) Indictment charging Jesus Alfonso Legarda ("Legarda") in Count 1 with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(A) and 846 (Doc. No. 1, Tab 2).

4.  Based on the above investigation, the United States and Legarda stipulated that Legard's revelant conduct in this matter involved at least 1.5 Killograms, but less than 5 Killograms of methamphetamine.


Date 10-9-09                           Respectfully Submitted,

                                       Jesus A. Legarda
                                       Jesus Algonso Legarda
                                       Reg. NO. 09532-091
                                       Federal Correctional
                                       Institution Englewood
                                       9595 West Quincy Ave.
                                       Littleton, CO 80123

GROUND ONE

<u>Claim For Ineffective Assistance Of Counsel</u>

Claims of ineffective assistance of counsel are raised initially
by motion in the District Court. In most cases, it's inappropriate
to raise the issue on direct appeal. Ineffective assistance claims
must be sufficiently substantiated in the trial court and an appropriate
record made. Pre-trial claims of ineffective assistance of counsel
are reviewed on a different standard then post-trial claims.

If a defendant claims before trial that counsel was ineffective
in investigation, preparation, or for some other substantial reason,
the trial court has a constitutional duty to conduct an inquiry sufficient
to determine the truth and scope of the defendant's allegations. The
court must make on-the-record findings sufficient to permit meaningful
review on the issue of the ability and preparedness of counsel to
render effective assistance under the prevailing conditions.

"The right to counsel is the right to effective assistance of
counsel." <u>Strickland v. Washington</u>, 466 U.S. 668,686, 80 L.Ed.2d 674,
104 S.Ct. 2052(1984). "When a jurisdiction provides an appeal of
right, due process also guarantees the assistance of counsel on appeal."
"<u>Evitts v. Lucey</u>, 469 U.S. 387, 83 L.Ed.2d 821, 105 S.Ct. 830(1985).
This right does not extend to "discretionary appeals," <u>Wainright v.
Torna</u>, 455 U.S. 586, 71 L.Ed.2d 475, 102 S.Ct. 1300(1982), "petitioners
for certiorari," <u>Ross v. Moffitt</u>, 417 U.S. 600, 41 L.Ed.2d 341, 94
S.Ct. 2437(1974), or "post conviction proceedings," <u>Coleman v. Thompson</u>,
501 U.S. 722, 115 L.Ed.2d 640, 111 S.Ct. 2546(1991); <u>Pennsylvania
v. finley</u>, 481 U.S. 551, 95 L.Ed.2d 539, 107 S.Ct. 1990(1987).

The defendant has a right to expect that his attorney will use
every skill, expend every energy, and tap every legitimate resource
in exercise of independent professional judgment on behalf of defendant

and in undertaking representation. **Frazer v. United States,** 18 F.3d
778, 779(9th Cir. 1994); U.S.C.A. Const. Amend 6, "counsel owes defendant
duty of loyalty, unhindered by state or by counsel's constitutionally
deficient performance."

Claims of ineffective assistance of counsel should be initially
raised before trial or sentencing. If the court fails to make adequate
findings, the conviction must be reversed or remanded. Once jeopardy
attaches, any claim of ineffective assistance is governed by the strickland
standard and should be addressed in a pre-trial or post-trial motion.

On post-trial claims of ineffectiveness, any question as to whether
a hearing is needed should be resolved in favor of conducting a hearing.
A hearing must be held unless the claims are vague, Wholly incredible,
or even if true, would merit no relief. Claims can be made in a section
2255 motion or motion for new trial.

"First, the defendant must show that counsel's performance was
deficient. Second, the defendant must show that the deficient performance
prejudiced the defense. This requires showing that counsel's errors
were so serious as to deprive the defendant of a fair trial, a trial
whose result is not reliable. "**Strickland** at 687. Id, in the instant
case at bar.

As for the prejudice requirement, "[t]he benchmark for judging
any claim of ineffectiveness must be whether counsel's conduct so
undermined the proper functioning of the adversarial process that the
trial cannot be relied on as having produced a just result."Strickland
at 686.

The "defendant need not show that counsel's deficient conduct more
likely than not altered the outcome of the case," Strickland at 693,
but rather "must show that there is a reasonable probability that,

The adversarial process of the trial cannot be relied on as having produced a just result." Strickland at 686.

The "defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case," Strickland at 693, but rather "must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." Strickland at 695-96.

Prejudice requirement does not require petitioner to prove that he would not have been found guilty. Prejudice in "pro-se" motions is not strictly construed. In cases which "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," ineffectiveness will be presumed under **United States v. Cronic**, 466 U.S. 648, 80 L.Ed.2d 657, 140 S.Ct. 2039 (1984).

### Section 2255 Standards:

Title 28, Section 2255 of the United States Code states: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] to vacate, set aside or correct the sentence."

### Ineffective Assistance Of Counsel Standards:

"Post conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." **Ledezma-Rodriquez**, 423 F.3d 830

836, **Davis v Norris**, 423 F.3d 868,877 2005(" To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in **Strickland v Washington**, 466 U.S. 668, 104 S.Ct.2052(1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudiced|d["). The deficient performance prong requires a showing that "counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment." "Strategic choices after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." **United States v. Rice**, 449 F.3d 887, 897. "There is a strong presumption that counsel's performance fell within the wide range of professional assistance." **Davis**, 423 F.3d at 877. To satisfy the "prejudice" component, there must be a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. **Rice**, 449 F.3d at 897.

### D. Post-Conviction Ineffective Assistance Of Counsel Claims

The customary procedure for challenging effectiveness of counsel under the Sixth Amendment is a post-conviction 28 U.S.C. §2255 motion. **United States v. Houtchens**, 926 F.2d 824, 828 (9th Cir. 1991). Prejudice is not strictly construed because strict definition "would impose a heavy burden on defendant's who are often proceeding pro se in an initial 28 U.S.C. §2255 motion." **Pequero v. United States**. 526 U.S. 23,24.143 L.Ed.2d 18, 119 S.Ct.961 (1999) (**O'Connor, J. Concurring**).

Claims should be raised for the first time in section 2255 proceedings and not on direct appeal for ineffective assistance. **Chappell v. United States**, 494 U.S. 1705, 108 L.Ed.2d 931, 110 S.Ct. 1800 (1990).

The circuit court of Appeals declined to address ineffective assistance claims on direct appeal because a "more appropriate way to pursue this... claim is by way of a...Proceeding" in which " a record may be developed to show what counsel did and resulting prejudice." **United States v. Simas**, 937 F.2d 459, 463 (9th Cir. 1991); **United States v. Hanoum**, 33 F.3d 1128 (9th Cir. 1994).

A claim of ineffective assistance of counsel is generally appropriate only in a collateral attack. **United States v. Gerace**, 997 F.2d 1293 (9th Cir. 1993). Default of an ineffective assistance of counsel claim is excused when the defendant's trial lawyer also prosecuted the appeal. **Lambright v. Stewart**, 220 F.3d 1022, 1028 n.6 (9th Cir. 2000).

it is obvious that ineffective assistance of counsel is not likely to be raised at trial or to appear among assignments of constitutional error where trial and appellate counsel are the same, **Lambright at 1028.**

Issues that rely on evidence outside the record cannot be raised on direct appeal. **United States v. Quintero-Barraza**, 78 F.3d 1344, 1347 (9th Cir. 1995). Claims of ineffective assistance of counsel usually cannot be raised on direct appeal, because such claims require evidence not already in the record, **Hanoum at 1347.**

An attorney who fails to file an appeal after being instucted by his client to do so is per se ineffective. The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe either: (1) that a rational defendant would want to appeal, for example, because there are non-frivolous grounds for appeal; or (2) that this particular defendant may prevail on appeal.

Thus, the petitioner, "Legarda" timely file his 2255 Post Conviction Motion.

GROUND 2

## PROSECUTORIAL MISCONDUCT

In the instant case at bar, the Petitioner, (Legarda) is held in prison, "with out cause" for over two years violating his fast speedy trial rights. He was placed in solitary confinement, withheld his medication, "beaten, and shot with 50,000 volt Tazor guns!" He was kept from his defense counsel, or from speaking to any attorney or anyone about his proceedings, and was withheld from seeing a doctor for medical treatment of his pre-existing condition, i.e. (seizures), not given his proper medication, thus, constituting an 8th Amendment violation of "cruel and unusual punishment."

Furthermore, this was done to force the Petitioner, (Legarda) to simply plead guilty in the above cited action. Thus, a Constitutional violation so tantamount, no court should allow it to stand.

### Outrageous Conduct Of Government

A defense asserting that the government's conduct was so outrageous as to deprive the defendant of due process, must be tested by an appraisal of the totality of the facts in a given case. In determining whether law enforcement officers engaged in outrageous conduct the court considers whether the government's conduct went beyond that of mere inducement, such that the government must have created or manufactured the crime solely for the purpose of generating criminal charges and without any motive to prevent further crime or protect the public at large, whether the government, in procuring the

defendant's commission of the crime, engaged in criminal or improper
conduct repugnant to the sense of justice, and whether the government
appealed to humanitarian instincts such as sympathy, past friendship,
or temptation by exorbitant gain to overcome the defendant's reluctance
to commit the offense. Other factors to be weighed include the need
for the type of government conduct in relationship to the criminal
activity, the preexistence of criminal activity, the level of direction
or control of the criminal enterprize by the government, and the
impact of the government activity to create the commission of the
criminal activity; these factors are for guidance  only and, therefore,
the presence of each factor need not be shown. There is authority
stating  that the four factors to be considered in determining whether
governmental conduct is so outrageous as to violate due process
are: The type of criminal activity involved, whether the activity
is preexisting or instead "instigated" by the government, whether
the government is directing the activity or merely participating
in it, and, the casual link between the government's conduct and
the acts of the defendant.

### Defense of Good Character or Reputation of Accused

The good character or reputation of the accused is not a defense
as a matter of law, but is a fact for the jury's consideration in
connection with other facts. A defendant is allowed to introduce
evidence of his or her good character and reputation where such
evidence has reference to a trait involved in the offense with which
he or she is charged.  Also, a criminal defendant is entitled to
offer his or her good character as evidence of the improbability
that he or she committed the act charged; however, once a defendant
takes the stand in order to profess his **or her good character,** the

defendant opens the door, and the prosecution is allowed to respond to the defendant's assertions of good character by impeaching him or her. An accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show the improbability that he or she committed the charged offense, when that character trait is relevant to the offense. Thus, a defendant's peaceful character is pertinet in a prosecution for a crime of violence, as an evidence of a peaceful character makes it less likely that the defendant committed the crime. However, evidence of the defendant's good character does not establish a distint, substantive defense.

## Prosecutorial Misconduct

In order to prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's remarks and conduct were, in fact, improper, and that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial. The prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere at trial or so gross as probably to prejudice the defendant in order to violate the defendant's right to a fair trial. Simply stated, prosecutorial misconduct is not a ground for a reversal unless the defendant has been denied a fair trial, or stated otherwise, a reversal is only required based on prosecutorial misconduct when the conduct caused substantial prejudice so that the defendant was denied due process. Indetermining prejudice from prosecutorial misconduct, the court weighs such factors as: the severity and pervasiveness of the misconduct; the significance of the misconduct to the central issues in the case; the strength of the state's evidence; the use of cautionary instructions or other curative measures; and, the extent to which the defense invited the misconduct. In other words, in order to determine whether prosecutorial

impropriety was so harmful as to deprive the defendant of a fair trial, the court applies the following factors: The extent to which the impropriety was invited by the defense conduct or argument, the severity of the impropiety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case.

Prosecutorial misconduct claims are not intended to provide an avenue for the tactical sandbagging of the trial courts, but rather, to address gross prosecutorial improprieties that have deprived a criminal defendant of his or her right to a fair trial. While a prosecutor may strike hard blows he or she is not at liberty to strike foul ones, since it is  as much his or her duty to refrain from improper methods calculated to bring a wrongful conviction as it is to use every ligitimate means tobring about a just one. By reason of his or her office, prosecutors usually exercise great influence upon jurors, and the prosecutor's conduct and language in the trial of cases in which human life is at stake should be forceful but fair, because the prosecutor represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment; if the defendant is guilty, he or she should be convicted only after a fair trial, conducted strictly according to the sound and well established rules which the laws prescribe. Where prosecutorial impropriety is identified, the factors to consider when determining whether the entire trial was so infected with unfairness as to deprive the defendant of a fair trial include whether: (1) the impropriety was invited by the defense; (2) the impropriety was severe; (3) the impropriety was frequent; (4) the impropriety was central to a critical issue in the case; (5) the impropriety was cured or ameliorated by a specific jury charge; and (6) the states case against the defendant was weak.

In analyzing claims of prsecutorial misconduct, an appellate court engages in a two step analytical process, each seperate and distinct, namely, whether misconduct occurred in the first instance, and whether that misconduct deprived a defendant of his or her due process right to a fair trial. In other words, an appelate court applies a two step analysis to allegations of prosectorial misconduct: First, the court decides whether the prosecutor exceeded the boundaries of permissable conduct, and if so, it next decides whether the conduct constituted plain error, that is, whether the conduct was so prejudicial as to deny the defendant a fair trial. In the second step of the two step analysis for alleged prosecutorial misconduct, the appellate court considers three factors to determine whether the prosecutorial misconduct so prejudiced the jury against the defendant that a new trial should be granted: (1) Whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant was direct and overwhelming. Thus, an appellate court will reverse a conviction by the prosecutor and a reasonable likelihood that the misconduct could have affected the jury's verdict, thereby denying the defendant a fair trial. On the other hand, the government's questions regarding why the defendant's children were present at his or her trial have been deemed not so prejudicial such that the defendant was denied a fair trial, where the weight of the evidence would have led to defendant's conviction regardless of the government's questions.

Whereupon, for the constitutional violation of abuse and mistreatment to the Petitioner, "Legarda" to force, him to plead guilty in the instant case at bar. The Petitioner requests this Court, to vacate the instant case at bar and order the Petitioners immediate release.

**EVIDENCE OF THE EVENT**

**OF MISTREATMENT**

_____

**WITNESS LIST**

1.    Casper Wyoming County Jail

2.    Correctional staff/Casper.

3.    Inmate: Steven Oldman/Casper County Prison.

4.    Attorney Steven Rozan, Esq.  Texas

5.    Attorney Alex Sitz, Esq. Cody, WY 82414
      Phone (307) 587-1300

GROUND 3

Defense Counsel Fails Tantamountly to File

Rule 404(b) Pretrial Motions

In the instant case at bar, the entire proceedings were built on nothing more than hearsay evidence. Produced by the Government, from "bought and paid for Criminals." "Crimen and Falsi" testimonies, from Convicted criminals, in exchange for little, to no prison sentences. Whereupon, if the defense counsel in the instant case, would have filed the proper pretrial motions, pursuant to Rule 404(b), the entire outcome of the proceedings would have been different, with the Petitioner going free.

Respectfully Submitted,

Jesus Alfonso-Legarda
Reg. NO. 09532-091
Federal Correctional
Institution Englewood
9595 West Quincy Ave.
Littleton, CO 80123

Violations Of Constitutional

Rights, Pursuant To "Crawford v. Washington"

## HEARSAY IN UNITED STATES LAW

Hearsay is the legal term that describes statements made outside of court or other judicial proceedings. Unless one of about thirty exceptions applies, hearsay is not allowed as evidence in the United States. The Hearsay Rule is an analytic rule of evidence that defines hearsay and provides for both exceptions and exemptions from that rule. There is no all-encompassing definition of hearsay in the United States. However, most evidentiary codes defining hearsay adopt verbatim the rule as laid out in the Federal Rules of Evidence, which generally defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Historically, the rule against hearsay is aimed at prohibiting the use of a person's assertion, as equivalent to testimony to the fact asserted, unless the asserter is brought to testify in court where he may be placed under oath and cross examined.

## THEORY OF THE HEARSAY RULE

The theory of the rule excluding hearsay is that assertions made by human beings are often unreliable; such statements are often insincere, subject to flaws in memory and preception, or infected with errors in narration at the time given. The law therefore finds it necessary to subject this form of evidence to "scrutiny or analysis calculated to discover and expose in detail its possible weaknesses, and thus to enable the tribunal (judge or jury) to estimate it at no more than it's actual value".

These tests are calculated to expose possible weaknessess in a statement:

1.   Assertions must be taken under oath

2.   Assertions must be made in front of the tribunal(judge or jury)

3.   Assertions must be subject to cross-examination.

Assertions not subject to these three tests are (with some exceptions) prohibited insofar as they are offered testimonially (for the truth they assert).

## FEDERAL RULES OF EVIDENCE

The Federal Rules of Evidence (See Article VIII) provide a general definition of hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Subject to two classes of "exemptions," this definition classifies a statement as hearsay if the statement meets two requirements: (1) the statement must be extra-judicial (i.e. not made by this witness in this proceeding). (2) The statement must be offered to prove the truth of what the satement asserts if anything.

However, as noted below, the Federal Rules of Evidence also provides two specific categories of exemptions of certain kinds of statements from this rule; statements in these categories are defined as "Non-hearsay."

Typically, one can classify a statement as hearsay under the Federal Rules of Evidence using a three step analysis. A statement will be considered hearsay if it is:

1.   An assertive statement

2.   Made by an out-of-court declarant

3.   Is being offered to prove the truth of the matter asserted therein.

An "assertive statement" is generally defined as the intentional communication of fact. Under the Federal Rules of Evidence, an assertive

can be oral, written, or non-verbal conduct if it was intended to be an assertion. However, any verbal or non verbal that was not intended to communicate a fact will not be considered an assertive statement.

In order for the statement to satisfy the out-of-court declarant element of hearsay, very simply stated, the statement must have been made outside of the courtroom that the present proceeding is taking place in--meaning that if the statement was made in another courtroom, it is still made by an out-of-court declarant.

Lastly, if a statement is being offered for its truth--meaning that its revelance depends upon the jury believing the substance of the statement--then it is being offered to prove the truth of the matter asserted therein. If a statement is relevant for any other purpose other than proving the truth of the matter asserted therein, then the statemant will not be considered hearsay under the Federal Rules of Evidence.

## APPLICATION

Generally in common law courts the "hearsay rule" applies, which says that a trier of fact (judge or jury) cannot be informed of a hearsay statement unless it meets certain strict requirements. However, the rules for admissibilty are more relaxed in court systems based on the civil law system. In the civil law system, the courts, whether consisting of judges or featuring a jury, have wide latitude to appreciate the evidence brought before them.

[Note: Louisiana, a civil-law jurisdiction, does not share the above referenced feature generally found in civil-law jurisdictions. With few exceptions, Louisiana follows rules predicated upon the Federal Rules of Evidence.]

Furthermore, even in common-law systems, the hearsay rule only applies to actual trials. Hearsay is admissible as evidence in many other judicial proceedings, such as grand jury deliberations, probation hearings, parole revocation hearings, and proceedings before administrative bodies.

In Criminal law, **Crawford v. Washington,** 541 U.S. 36 (2004), reformulated the standard for determining when the admission of hearsay statements in criminal cases is permitted under the Confrontation Clause of the Sixth Amendment to the Constitution. Crawford gives enhanced protection to defendants when the hearsay offered against them is testimonial in nature. When a statement is deliberately accusatory, or when the declarant knows that the statement is likely to be used in the prosecution of the defendant for a crime, the need for face to face confrontation is at its highest. When statements are directly accusatory, the defense needs an opportunity to explore the accuser's motives. When statements are the product of a police interrogation, there is need to ensure that the testimony is not the product of improper coercion or intimidation.

**Ohio v. Roberts,** 448 U.S. 56 (1980), set forth a two pronged test in order for hearsay to be admissible against a criminal defendant: (1) the declarant generally must be shown to be unavailable; and (2) the statement must have been made under circumstances providing sufficient "indicia of reliabilty." With respect to the second prong, a reliabilty determination may assume that hearsay is sufficiently reliable for constitutional purposes if it satisfies a "firmly rooted" hearsay exception. In practice this means that lower courts need to make reliability determination only for hearsay that is offered under a "catchall" exception, such as Federal Rule of Evidence 807, or under new or non-traditional hearsay exceptions that are not "firmly rooted." However, **Crawford v. Washington,** overruled **Ohio v. Roberts.**

## COMMON MISCONCEPTIONS

One major misconception about the hearsay rule is that hearsay is never never admissible in court. While the general rule is that such evidence is inadmissible, there are many exceptions.

There are two other common misconceptions concerning the hearsay rule. The first is that hearsay applies only to oral statements. The hearsay rule applies to all out-of-court statements whether oral, written or otherwise. The Federal Rules of Evidence defines a statement as oral or written assertion or non verbal conduct of a person, if the conduct is intended by the person as an assertion. Even written documents made under oath, such as affidavits or noterized statements, are subject to the "hearsay rule."

The second common misconception is that all out-of-court statements are hearsay. This is not the case. An out of court statement may or may not be hearsay depending on the purpose for which it is offered. If the statement is being offered to prove the truth of what it asserts, then it becomes hearsay. When offered for any other purpose the statement is not hearsay. For example: Witness testifies that yesterday he spoke to Jim (who was in Vermont) on the phone and that Jim made the following statement, "It's raining in Vermont!" If the attorney is seeking to use this statement to prove that it was in fact raining in Vermont, then it is hearsay. But, if the attorney were seeking to use the statement to prove that the phone lines were working on that day, or that Jim had not lost the power of speech, or for any other purpose, than the statement is not being offered to prove the truth of the matter asserted, and therefore it is not hearsay.

Consider an additional example:

    Officer Friday, a police officer, hears cries of "Help, Slayer is
    trying to kill me!" From inside a house. Believing that they is
    a crime in progress, the officer kicks the front door down and enters
    the home to discover the homeowner, Slayer, assaulting a victim,
    Monica, who is crying and visibly shaking. Slayer is charged with
    attempted murder. Two seperate trials might result from these circumstances.
    1.  First, a criminal trial against Slayer, who proclaims his innocence
    and demands a trial for the criminal charges alleged.
    2.  Second, a civil trial in which Slayer sues Officer Friday for
    invading his home, wherein Officer Friday will assert that there
    was just cause to enter the home because he had a genuine belief
    that a crime was occurring.

In the first trial, the issue is whether Slayer attempted to kill Monica.
Officer Friday is asked to testify to what he heard Monica scream from
inside the house, i.e. "Help, Slayer is tring to kill me!" This statement
would be hearsay. Officer Friday is being asked to testify to what
Monica said to prove that Slayer attempted to murder Monica. Unless,
the attorney can show that this statement falls within an exception
to the hearsay rule, the factfinder (the judge or jury) will never
be allowed to consider Monica's statement (this particular statement,
however, would likely be admissible because of "Excited Utterance"
and "Present sense impression" exceptions).

    In the second trial, however, the issue is not whether Slayer tried
to kill Monica, but rather whether Officer Friday's entry into the
home was lawfull. Here, the statement is not being offered to prove
that Slayer tried to kill Monica, but instead is being offered to prove
that Office Friday had probable cause to enter the home. Whether Slayer

was trying to kill Monica is unimportant. What matters is whether Officer Friday believed that Monica was in danger. Monica's statement is evidence to that effect because a reasonable person having heard Monica's cries for help would fear for her safety.

A person's own statements can be hearsay. For example, suppose a person is testifying on the stand. In relation to an autmobile accident where a blue truck struck a yellow car, the witness testifies, "I told the police officer the truck was blue." This statement is an out-of-court statement offered for the purpose of proving the truth of the matter asserted and therefore hearsay. The witness is testifying about what was said in the past. The fact that it is his own statement does not change the hearsay nature of the statement.

If the witness testifies, "The truck that struck the yellow car was blue," the statement is not hearsay. The witness is not testifying about a past statement. He is not relating in court what someone outside of court said, but is merely relating an observation.

The rule that a person's own statements can be considered hearsay may be confusing by "forgetting" who is testifying on the stand and merely looking for statements like "I said", "I wrote", "I testified before that". "The document says", and the like, most confusion can be eliminated.

In this example, simple logic tells that there is a difference: While the first statement may be true, it does not assert anything about the truth of the matter stated. The witness may have told the officer that the truck was blue; this, however, need not have been the truth-he might have been mistaken or deliberately lying.

## NON-HEARSAY UNDER FEDERAL RULES

Under the Federal Rules of Evidence, two broad categories of statements are exempt from the rule's general definition. These are referred to as hearsay "exemptions" and are two types:

**Admission by party-opponent**

An admission by a party-opponent is a statement offered against another party that meets one of five criteria:

1.  The party against whom the statement is being offered is also the declarant of that statement either personally or in a representive capacity.

2.  The party against whom the statement is being offered manifested an adoption or belief in the statement's truth.

3.  The party against whom the statement is being offered authorized the declarant to make the statement.

4.  The statement is made by an agent of the party against whom it is being offered and concerns a matter within the scope of the employment and is made during the course of that employment.

5.  The declarant was a co-conspirator of the party against whom the statement is being offered and the statement is in furtherance of their conspiracy.

The theory underlying this "exemption" is derived from the nature of the hearsay rule itself. The hearsay rule operates to exclude extra-judicial assertions as untrustworthy because they cannot be tested by cross-examination. When an assertion is offered into evidence against the defendant and the defendant objects, "hearsay," the defendant is in essence saying "I object to this statement as untrustworthy because I am not afforded an opportunity to cross-examine the person

who made it. How can we trust what he said?" But what if the defendant is the person who made the statement that is now being offered against him? To object, "hearsay" in this circumstance would be as absurd as to argue, "This statement is unreliable because I cannot cross examine myself; therefore, how can I trust what I said?" In this situation the objection of the Hearsay rule falls away, because the very basis of the rule is lacking, viz. the need and prudence of affording an opportunity of cross-examination. Another way of looking at it is that a defendant who faces his own statement being used against him has an opportunity to cross-examine himself-he can take the witness stand and explain his prior assertion, so the rule is satisfied.

**Prior statement by a witness**

A prior statement is not hearsay if the person who made the statement (the "declarant") testifies at the trial or hearing subject to cross examination, and (A) the prior statement is inconsistant with the declarant's testimony at trial, etc., and the prior statement was given under oath at a trial, hearing, deposition, or other proceeding, or (B) the prior statement is consistant with the decalarant's testimony, and is offered to rebut a charge that the declarant has made a recent fabrication, or a charge of the declarant's improper influence or motive, or (C) the prior statement was an identification of a person made after preceiving that person.

## HEARSAY EXCEPTIONS

Some statements are defined as hearsay, but may nevertheless be admissible as evidence in court. These statements relate to exceptions to the general rule on hearsay. Some (but not all) exceptions to the hearsay rule apply only when the declarant is unavailable for

for testimony at the trial or hearing.

Many of the exceptions listed below are treated more extensively
in individual articles.

**Hearsay exceptions that apply even where the declarant is available**

1. **Excited utterances:** Statements relating to startling events or
   condition made while the declarant was under stress of excitement
   caused by the event or condition. This is the exception that may
   apply to the 'police officer' scenario listed above. The victim's
   cries of help were made under the stress of a startling event,
   and the victim is still under the stress of the event, as evidenced
   by the victim's crying and visble shaking. An excited utterance
   does not have to be made at the same time of the startling event.
   A statement made minutes, hours or even days after the startling
   event can be excited utterances, so long as the declarant is still
   under the stress of the startling event. However the more time
   that elapses between a startling event and the declarant's statement,
   the more the statements will be looked upon with disfavor.

2. **Present sense impressions:** A statement expressing the declarant's
   impression of a condition existing at the time the statement was
   made, such as "it's hot in here", or "we're going really fast".
   Unlike an excited utterance, it need not be made in response to
   a startling event. Instead, it is admissible because it is a condition
   that the witness would likely have been experiencing at the same
   time as the declarant, and would instantly be able to corroborate.

3. **Declarations of present state of mind.** Much like a present-sense
   impression describes the outside world, declarant's statement
   to the effect of "I am angry!" or "I am Napoleon!" will be admissible

to prove that the declarant was indeed angry, or did indeed believe
himself to be Napoleon at that time. Used in cases where the declarant's
mental state is at issue. Present state-of-mind statements are
also used as circumstantial evidence of subsequent acts committed
by the declarant, like his saying, "I'm gonna go buy some groceries
and get the oil changed in my car on my way home from work."

Another exception is statements made in the course of medical treatment,
i.e. statements made by a patient to a medical professional to help
in diagnosis and treatment. Any statements contained therein that
attribute fault or causation to an individual will generally NOT be
admissible under this exception, unless it involves a small child.
(The Tender Years Doctrine).

**The business records exception:** Business records created during
the ordinary course of business are considered reliable and can
usually be brought in under this exception if the proper foundation
is laid when the records are introduced into evidence. Depending
on which juisdiction the case is in, either the records custodian
or someone with knowledge of the records must lay a foundation
for the records,  however.

The use of police reccrds, especially as substantive evidence against
the accused in a criminal trial, is severely restricted under the
Business Records exception. Typically, only generalized evidence about
police procedure is admissable under this exception, and not facts
about a specific case. For example, John is stopped for speeding 70
miles per hour in a 50 mile per hour zone. The Officer, who determined
John's speed with radar, records the speed in an incident report.
He also  calibrates and runs a diagnostic on his radar every day prior
to begining his shift. He records this in a log. At trial, the report

itself would not be admissible as it pertained to the facts in the
case. However, the officer's daily log in which he records his calibration
and the daily record diagnostics of his radar unit would be admissible
under the business records exception.

Because the Federal Rules of Evidence do not apply in the military
tribunals in Guantanamo Bay, the hearsay rule does not apply. How,
if at all, this affects prisoner's Confrontation Claus rights, if
any, is an interesting question.

**Other exceptions, declarant's availabilty immaterial:**  In the
United States Federal Rules of Evidence, separate exceptions are
made for public records, family records, and records in ancient documents
of established authenticity. When regular or public records are kept,
the absence of such records may also be used as admissible hearsay
evidence.

**Hearsay exceptions that apply only when the declarant is unavailable**
**Dying declarations and other statements under belief of impending**
**death:**  Often depicted in movies; the police officer asks the person
on his deathbed, "who attacked you?" and the victim replies, "The
butler did it." However, case law has ruled out this exception in
criminal law, because the witness should always be cross examined
in court.

**Declarations against interest:**  A statement that would incriminate
or expose the declarant to liabilty to such an extent that it can
be assumed he would only make such a statement if it were true. It
would be assumed that one would lie to further one's interests, so
a statement against his interests (such as exposing one's self to
criminal or civil liability) likely would not be made unless it were
true.

**Prior testimony:**  If the testimony was given under oath and the party against whom the testimony is being proffered was present and had the opportunity to cross examine the witness at that time. Often used to enter depositions into the court record at trial.

**Admission of guilt:**  If you make a statement, verbal or otherwise, as an admission of guilt of the matter at hand, that statement would not be regarded as hearsay. In other words, self-incriminating statements (confessions) are not hearsay.

**Forfeiture by wrongdoing:**  The party against whom the statement is now offered (1) intentionally made the declarant unavailable; (2) with intent to prevent declarant's testimony; (3) by wrongdoing. In plain English, if you get rid of a witness, statements they made can be used against you.

**Theories supporting hearsay exceptions**

In some juirdictions, such as Canada, the limited exceptions format to the rule have been replaced by a more general theory of exceptions to the hearsay rule that allows courts to decide when documents, testimony or other evidentiary proof can be used that might not otherwise be considered.

The underlying rationale for many of the hearsay exceptions is that the circumstances of a particular statement make them reliable enough to be heard by a trier of fact. Statements made during the course of medical treatment, for example, are considered reliable because patients typically have little reason to lie to a doctor while they are being treated, and will generally be accurate in describing their ailments.

This, of course, is not always true. Patients do sometimes lie to their doctors (to get painkillers to which they are not entitled,

for example). Hearsay exceptions do not mandate that a trier of fact
(the jury or, in non-jury trials, the judge) accept the hearsay statement
as being true. Hearsay exceptions mean only that the trier of fact
will be informed of the hearsay statement and will be allowed to consider
it when deciding on  a verdict in the case. The jury is free to disregard
a hearsay statement if the jury dors not believe it. The hearsay rule
controls what out-of-court statements a trier of fact gets to consider
in deciding a case, not how they consider the out-of-court statements.

References

1.    "Hearsay evidence". Findlaw for the public.
http://criminal. findlaw.com/crimes/more-criminal-topics/evidence-witnesses/
hearsay-evidence.html. Retrieved on 2008-01-31.

2.    Rule 801, 28 U.S.C. App. See Rule for Courts-Martial 801, Manuel
for Court Martial, United States (2005 ed.)

3.    Wigmore on Evidence §1360

4.    FRE 804(b)(3)

---

## Defense Counsel Was Ineffective For Not Filing
## A Rule 404 (b) Motion

---

Rule 404. Character Evidence Not admissible To Prove Conduct; Exceptions;
Other crimes

(A)  Character evidence generlly.  Evidence of a person's character
or trait of character is not admissible for the purpose of proving
action in conformity therewith on a particular occasion, except:

    (1)  Character of accused. In a cmininal case, evidence of a
    pertinent trial of character offered by an accussed, or by the
    prosecution to rebut the same, or if evidence of a trait of character
    of the alleged victim of the crime is offered by an accused and

admitted under Rule 404(a)(2), evidence of the same trait of
character of the accused offered by the prosecution;

(2)  Character of alleged victim. In a criminal case, and subject
to the limitations imposed by Rule 412, evidence of a pertinent
trait of character of the alleged victim of the crime offered
by an accused, or by the prosecution to rebut the same, or evidence
or a charactoer trait of peacefulness of the alleged victim offered
by the prosecution in a homicide case to rebut eveidence that
the alleged victim was the first aggressor;

(3)  Character of witness. Evidence of the character of a witness,
as provided in Rules 607, 608, and 609.

(B)  **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs,
or acts is not admisiable to prove the character of a person in order
to show action in conformity therewith. It may, however, be admissible
for other purposes, such as proof of motive, opportunity, intent, preperation,
plan, knowledge, identity or absence of mistake or accident, provided
that upon request by the accused, the prosecution in a criminal case
shall provide reasonable notice in advance of trial, or during trial
if the court excuses pretrial notice on good cause shown, of the general
nature of any such evidence it intends to introduce at trial. (Jan.
2, 1975,P.L. 93-595, § 1,88 Stat. 1932; Oct.1, 1987; Dec.1,1991; Dec,
1, 2000; Dec. 1, 2006.)

**History: Ancillary Laws and Directives**

**Other provisions: Notes of Advisory Committee on Rules.**

Subdivision (a).  This subdivison deals with the basic question
whether character evidence should be admitted. Once the admissibilty
of character evidence in some form is established under this
rule, reference must then be made to Rule 405, which follows,
in order to determine the appropriate method of proof.

If the character is that of a witness, see Rules 608 and 610
for methods of proof. Character questions arise in two fundamentally
different ways. (1) Character may itself be an element of a crime,
claim or defense. A situation of this kind is commonly referred
to as "character in issue." Illustrations are: the chasity of
the victim under a statue specifiing her chasity as an element
of  the crime of seduction, or the compentency of the driver
in an action for negligently entrusting a motor vehicle to an
incompetent driver. No problem of the general relevancy of character
evidence is involved, and the present rule therefore has no provision
on the subject. The only question relates to allowable methods
of proof, as to which see Rule 405, immediately following. (2)
Character evidence is susceptable of being used for the purpose
of suggesting and interference that the person acted on the occasion
in question consistenly with his character. This use of character
is often described as "Circumstantial." Illustrations are: evidence
of a violent disposition to prove that person was the aggressor
in an affray, or evidence of honesty in disproof of a charge
of theft. This circumstantial use of character evidence raises
questions of relevancy as well as questions of allowable methods
of proof.

In most jurisdictions today, the circumstantial use of character
is rejected but with important exceptions: (1) and accused may
introduce pertinent evidence of good character (often misleadingly
described as "putting his character in issue"), in which event
the prosecution may rebut with evidence of bad character; (2)
an accused may introduce pertinent evidence of the character
of the victim, as in support of a claim of self-defense to a
charge of homicide or consent in a case of rape, and the prosecution

may introduce similar evidence in rebuttal of the character evidence,
or, in a homicide case, to rebut a claim that deceased was the
first aggressor, however proved; and (3) the character of the
witness may be gone into as bearing on his crediablity. McCormick
§§ 155-161. This pattern is incorporated in the rule. While its
basis lies more in history and experince than in logic as underlying
justification can be fairly found in terms of the relative prejudice
in various sitations. Falknor Extrinsic Policies Affecting Admissibilty,
10 Rutger, L.Rev.574,584 (1956); McCormick §157.  In any event,
the criminal rule is so deeply imbedded in our jurisprudence as
to assume almost constitutional proportions and to overide doubts
of the basic relevancy of the evidence. The limitation to pertinent
traits of character, rather than character generally, in paragraphs
(1) and (2) is in accordance with the prevailing view. McCormick§158,
p. 334. A similar provision in Rule 608, to which reference is
made in paragraph (3), limits character evidence respecting witnesses
to the trait of truthfulness or untruthfulness.
The argument is made that circumstantial use of character ought
to be allowed in civil cases to the same extent as in criminal
cases, i.e. evidence of good (nonprejudicial) character would be
admissible in the first instance, subject to rebuttal by evidence
of bad character. Falknor, Extrinsic Polices Affecting Admissibilty,
10 Rutgers L.Rev.574, 581-583 (1956); Tentive Recommendations and
a Study Relating to  Uniform   Rules of Evidence (Art.VI. Extrinsic
Policies Affecting Admissibility), Cal Law Revision Comm'n, Rep.,
Rec & Studies, 657-658 (1964). Unifor Rule 47 goes farther, in that
it assumes that character evidence in general satisfies the conditions
of relevancy, except as provided in Uniform Rule 48.

The difficulty with expanding the use of character evidence
in civil cases is set forth by the California Law Revision Commission
in its ultimate rejection of Uniform Rule 47, ID., 615;
"Character evidence is of slight probative value and may be prejudicial.
It tends to distract the trier of fact from the main question of
what actually happened on the particular occasion. It subtly permits
the trier of fact to reward the good man to punish the bad man because
of their respective characters despite what the evidence in the
case shows actually happened."
Much of the force of the position of those favoring greater use
of character evidence in civil cases is dissipated by their support
of Uniform Rule 48 which excludes the evidence in negligence cases,
where it could be expected to achieve its maximum usefulness. Moreover,
expanding concepts of "character," which seem of necessity to extend
into such areas as psychiatric evaluation and psychological testing,
coupled with expanded admissibilty, would open up such vistas of
mental examinations as caused the Court concern in **Schlagenhauf
v. Holder,** 397 U.S. 104, 85 S.Ct.234,13 L.ED.2d 152 (1964). It is
believed that those espousing change have not met the burden of
persuasion.
Subdivision (b) deals with a specialized but important application
of the general rule excluding circumstantial use of character evidence.
Consequently with that rule, evidence of other crimes, wrongs, or
acts is not admissible to prove character as a basis for suggesting
the inference that conduct on a particular occasion was in conformity
with it. However, the evidence may be offered for another purpose,
such as proof of motive, opportunity, and so oan, which does not
require that the evidence be excluded. No Mechanical solution is
offered. The determination must be made whether the danger of undue

prejudice outweighs the probative value of the evidence in view of
the availability of other means of proof and other factors appropriate
for making decisions of this kind under Rule 403, Slough and Knightly,
Other vices, Other crimes, 41 Iowa L.Rev. 325 (1956).

### COMMENTARY
By Stephen A. Saltzburg, Daniel J. Capra, and Michael M. Martin

#### Permissible and impermissible use of character evidence

Character questions arise in two different ways in litigation. Character
may be an element of a charge, claim or defense. When this occurs,
Courts say that character is "in issue". An example is the compentency
of a driver in action for negligently entrusting a motor vehicle to
an incompetent driver; another is an action for defamation of character
in which the defendant referred to the plaintiff as a dishonest person.
In such cases, it is clear that character evidence is relevant. In
fact, it is more than relevant, because it is essential under the pertinent
substantive law to prove character in order to prove the charge, claim
or defense. See, e.g. **United States v. Keiser,** 57 F.3d 847 (9th Cir.1995)
(character is "in issue" within the meaning of the Rule when "proof,
or failure of proof of the character trait by itself [would] actually
satisfy an element of the charge, claim or defense"). These cases are
not covered by the exclusionary principles of Rule 404.

Sometimes character evidence is used for an entirely different purpose;
it is used to demonstrate that because a person has a certain character
trait, he or she acted on a specific occasion in conformity with this
trait. In other words, this kind of character evidence is circumstantial
evidence of a person's actions on a particular occasion. It is these
cases that are covered by Rule 404(a). Subdivision (b) covers the use
of particular acts of a person that may be indictive of the person's
character.

### The General Rule and its Exceptions

Subdivision (a) of the Rule states the general rule, which is that evidence of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. The rationale behind the general rule is set forth in the classic case of **Michelson v. United States,** 335 U.S. 469, 482 (1948). The discussion in Michelson is in the context of a criminal case, but its rationale is equally applicable to excluding evidence of character in a civil case: The character inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh tto much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experince that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

But there are important exceptions to the general rule precluding character evidence where character is not "in issue". One is that a defendant in a criminal case is given the right to introduce evidence of his or her own pertinent character trait. Thus, in a fraud case the criminal defendant is permitted to call witnesses to testify that he is an honest person, in order to show that he was unlikely to have committed the dishonest act charged. The rationale for this is that the defendant deserves the benefit of all reasonable doubts and that good character may produce a reasonable doubt. This exception is covered in subdivision (a)(1) of the Rule.

For a similar reason, the accused is permitted to introduce evidence of a pertinent character trait of the victim of a crime; This exception is incorporated in subdivision (a)(2) of Rule 404. The most common example is in a self-defense case.

Under the Rule, the defendant is permitted to introduce evidence of the victim's character for aggressiveness (subject to the limitations on form provided by Rule 405), to create the inference that the victim acted in accordance with that character trait on the occasion in question. Admissibility is not dependent on the defendant's prior awareness of the victim's character trait; the evidence is admissible to show how the victim acted. "The rule does not contemplate that the character evidence will somehow reveal the defendant's state of mind at the time he acted in self defense." **United States v. Keiser,** 57 F.3d 847, 854 (9th Cir. 1995). The exception to the character evidence exclusion provided in Rule 404(a)(2) is not applicable in rape and sexual assault cases; Rule 412 governs such cases. Another common exception, also provided for in the Rule is subdivision(a)(3), is that when a witness is impeached (i.e. his credibility is attacked) or rehabilitated (i.e., his credibility is bolstered), this may be done by using character evidence. The forms of permissible and impermissible  attack and rehabilitation are discussed under Rules 607, 608, 609, 610. and 613. Finally, the limitations on circumstantial use of character evidence found in Rule 404 are generally inapplicable in cases where a civil or criminal defendant is charged with sexual misconduct. See the commentary under Rules 413-415.

### Character trait must be relevant

While the defendant has the option of introducing his character traits, or those of the victim, it is obvious that the character traits must be relevant to the case, or else they will be excluded under Rules 402 and 403. For example, in **United States v. Martinez,** 988 F.2d 685 (7th Cir. 1993), the defendants were charged with murder arising from a prison conflagration. Evidence of the violent character of the victims was held properly excluded as not relevant where there was no viable self-defense claim.

The evidence showed that the victims were rendered defenseless and were repeatedly stabbed while lying motionless on the ground. The defendants argued that they were acting in self-defense at the beginning of the fight; but this was not relevant to the subsequent conduct that was at the heart of the murder charge.

## What is a character trait?

The term "character" is susceptible to several meanings. For example, is "law-abidingness" a character trait? The government has often argued that "being prone to law-abiding conduct" is not and "actual" character trait bit is rather a conclusion that must be drawn from other character traits such as honesty, relibilty, and rectitude. However, the Courts have generally held that "character traits admissible under Rule 404(a)(1) need not constitute specific traits of character but may include general traits such as lawfulness and law abidingness." **United States v.Diaz,** 961 F.2d 1417, 1419 (9th Cir.1992).

This does not mean, however, that the accused has unbounded freedom to define a character trait. For example, in **United States v. Diaz,** 961 F.2d 1417 (9th Cir. 1992). The defendant was charged with possession with intent to distribute more than 500 grams of cocaine. Defense counsel tried to ask a defense witness whether Diaz had a "character trait for being prone to large-scale drug dealing." However, the prosecution objected and the objection was sustained. The Court of Appeals found no error because a defendant's propensity (or lack thereof) to engage in large-scale drug dealing "is not an admissible character trait." The proposed testimony was not the same as testimony that the defendant was law-abiding, because it was in effect so specific as to be misleading. The Court reasoned that an inquiry into a propensity to engage in large-scale drug dealing, would be misleading if addressed to a defendant with a record of criminal offenses other than drug dealing; If answered in the negative [as the defendant in Diaz, of course, anticipated]

the impression may be given that the defendant is a law abiding person although he has a record of other crimes.

## Opening the Door

The prosecution cannot, in the first instance, introduce character evidence to show that a person acted in accordance with a character trait. See, e.g. **United States v. Whittington,** 26 F.3d 456 (4th Cir.1994) Error committed where prosecution witness was allowed to tesify that the defendant was a "dangerous woman," a "snake," and a "rat". However, the prosecution can introduce character evidence responsively. As the Michelson Court put it; "the price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." 335 F.3d at 478.

If defense counsel decides that the benefit of character evidence is not worth the cost of rebuttal, then counsel must guard against presenting any testimony that could be interpreted as character evidence. The character door can be deemed open by means less obvious than calling a witness who testifies explicitly to a person's character trait. For example, in **United States v. Dahlin,** 734 F.2d 393, 395 (8th Cir.1984), the defendant was charged robbery; his alibi was that he was babysitting his sister's infant child at the time of the robbery. The prosecution argued that Dahlin could still have committed the robbery, by leaving the infant at home, unattended, for a period of time. Dahlin took the stand and tesified that he was deeply devoted to his niece and that he never left the child alone. The prosecution rebutted this claim of Dahlin's family relations by questioning Dahlin about a knife fight that he had with his father. The Court of Appeals held that Dahlin had opened the door to this evidence because he had "put at issue his reliability, responsibility and familial devotion, which were traits pertinent to the jury's appraisal of his defense."

Dahlin did not simply deny that he left his niece unattended, ....
that he was too devoted to his niece to leave her unattended, and
that he never did so. This is just another way of saying that he
was "not the type of guy" to leave an infant family member unattended.
Thus, Dahlin's testimony was far enough removed from the specific
act at issue, and close enough to testimony about his personality
and general conduct, to justify a ruling that he had opened the door
to negative character evidence.

Of course, even if the defendant opens the character door, the
prosecutor's rebuttal is limited to that which is reposnive. So, for
example, if the defendant introduces evidence of a relevant character
trait of the victim, the prosecution cannot respond with a negative
character trait of the defendant... the door was never opened as
to the defendant's character traits. Likewise, if the defendant introduces
positive evidence concerning one of his character traits, the prosecution
cannot respond with negative evidence concerning a different  character
trait.

## Other crimes, wrongs, or acts

Rule 404(b) provides that when evidence of other crimes or wrongs
or acts (often referred to by the Courts as "uncharged misconduct"
or "bad acts") is offered for some purpose other than to prove the
character of a person on order to show action in conformity therewith,
the Rule does not exclude the evidence. It is no great surprise to
find the second sentence of subdivision (b) receiving the most attention
in the decided cases. While the second sentence  is permissive and
not mandatory, Courts have traditionally een very willing to let
evidence of other crimes in, even when the presecution's theory of
relevance is quite weak.

Although the distinction between acts offered to prove propensity and acts offered for another purpose is not easily drawn, it is helpful to consider whether the factfinder is asked to engage to infer from behavior on one occasion something about the nature of a person and then to infer from that how the person probably would have behaved on another occasion, when the only connection between the two occasions is that the factfinder believes that people of a certain type would act the same way both times. If so, then the evidence is character evidence. If the factfinder can reason from one act about another without going through the first step, the evidence is not character evidence.

There is noting in the Rule that requires evidence of other crimes, wrongs, or acts to be admitted. Because Rule 403 applies to evidence even if it is ostensibly offered for a not-for-character purpose, the Trial Court must balance the prejudicial effect of such evidence against its probative value. Trail Couts have been instructed to be careful to ensure that the purpose for which the evidence is offered is more that just a sham for introducing the evidence and using it as proof of character. See, e.g. **United States v. Merriweather,** 78 F.3d 1070 (6th Cir. 1996) (emphasizing the need for a "close and careful" analysis of evidence of unchanged misconduct). Courts are particularly wary when the proponent of bad act evidence cites a "laundry list" of possible purposes, without being able to articulate how the evidence is probative of those purposes or even that those matters are the in issue in the case. For example, in **United States v. Rivera,** 873 F.2d 906 (1988), modified on other grounds en banc, 874 F2d 754 (10th Cir. 1989), The appellants conviction was reversed after bad act evidence was admitted to show according to the prosecutor, four or five things, one of which is absence of mistake, motive, intent, identity,

I forget what all, there are four or five. Neither the prosecutor
nor the Judge articulated which if any elements were disputed in the
case. The Court of Appeals panel found an abuse of discretion due
to the Trail Court's falure to conduct an inquiry as to the appropriate
(if any) not-for-Character purpose for the evidence. While the panel
opinion was vacated by en banc review, Rivera provides a reminder
of the need for specific articulation of not-for-character purposes
under Rule 404(b).

   **A balancing test for evidence of uncharged misconduct**

   Bad act evidence is not automatically admissible simply because
the proponent has articulated a not-for-character purpose to which
the evidence could be put. The Supreme Court, in **Huddleson v. United
States,** 485 U.S. 681, 688 (1988), stated that the decision to admit
evidence under Rule 404(b) depends as well on "whether the danger of
unfair prejudice [substantially] outweighs the probative value of the
evidence in view of the availability of other means of proof and other
factors appropriate for making decisions of this kind under Rule 403."
Thus, the court has recognized that exclusion is mandated if the probative
value of the bad act, in proving the permissible, not-for character
purpose, is substantially outweighed by the risk that the jury would
misuse the evidence in a criminal case of serious uncharged crimianl
activity by the accused must be examined very carefully. The more heinous
the other acts by a defendant, the more likely the jury is to misuse
the evidence and treat the defendant as a generally bad person, something
the Rule does not permit. Also, the more similar the bad act is to
the act charged, the more likely the jury is to draw the impermissible
inference that the defendant has a propensity to commit such acts.

Under rules 403 and 404(b), the unchanged misconduct evidence should be admitted when the balance between probative value and prejudicial effect is close. See also **United states v. Clark,** 988 F.2d 1459 (6th Cir. 1993)(where the defendant was charged with killing a witness to a crime the defendant committed, evidence of the underlying crime, even though highly prejudicial, was properly admitted under Rule 404(b) and Rule 403 highly probative of motive). On the other hand, where the evidence is plainly prejudicial and is not very important to the governments case, it should be excluded. See, e.g. **United States v. Gordon,** 987 F.2d 902 (2nd Cir. 1993)(prior minor drug abuse transaction is not sufficiently probative of the defendant's participation in a major drug conspiracy; none of the alleged coconspirators were participants in the prior transaction; evidence should have been excluded under Rule 403).

As discussed in the Editorial Explanatory Comment to Rule 403, the Trial Court must take into account whether the same point can be proved with evidence that does not refer to uncharged bad acts; the cost of admitting prejudicial evidence is unacceptable if equally probative and less prejudicial is reasonably available. For example, it may be necessary in many cases to introduce the defendant's handwriting exemplar; but it is usually not necessary to do so by way of a document that refers to the defendant's uncharged crimes. See. e.g. **United States v Turquitt,** 557 F.2d 464 (5th Cir. 1977)(reversible error to admit document referring to other crimes in order to authenticate defendant's handwriting, since "other known and less prejudicial specimens would have produced the same result ").

### Proper procedure

The Court in **United States v. Merriweather,** 78 F.3d 1070, 1076 (6th Cir. 1996), summed up the appropriate procedure with respect to evidence offered under Rule 404(b) as follows:

Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the specific purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. *** [T]he government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.

After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove motive or intent or identify [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must then determine, before admitting the other acts of evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which they may consider the evidence.

The Merriweather Court stated, as many other Courts have done, that the Rule 404(b)/403 analysis must be conducted on the record. See also **United States v. Roberts,** 88 F.3d 872 (10th Cir. 1996) (remanding for explicit on-the-record determination) However, to be entitled to on-the-record findings on the probative value and prejudicial effect of uncharged misconduct evidence, the defendant must specifically request an on-the-record articulation of those factors. Thus, in **United States v. Fox,** 69 F.3d 15 (5th Cir. 1995), the defendant objected to the admission of uncharged misconduct evidence, but did not specifically request an on-the-record articulation of probative value and prejudice; the Court therefore found no error in the Trial Court's failure to make on-the-record findings.

## Stipulating to a mental element

One of the Not-for-character purposes listed in Rule 404(b) is intent and another is knowledge. Often, the prosecution seeks to admit a bad act similar to that which the defendant is charged, as proof that the defendant intended to commit the act charged, or had knowledge required by the statute. See, e.g. **United States v. Robichaux,** 995 F.2d 565 (5th Cir.1993)(prior fraudulent transaction properly admitted to rebut the defendant's claim that he did not know "what was going on" in the transaction for which he was charged). Certainly this can be probative evidence where the defendant disputes intent or knowledge, for example by contending that he was duped, or mistaken, or that "it was an accident." But what if the defendant contends instead that he did not commit the crime, that he was never at the scene, that the witnesses are lying, that he was falsely identified, etc? To what extent does the defendant's refusal to contest intent or knowledge .... or offer to stipulate to these elements...prevent the prosecution from proving it through uncharged misconduct?

Until the decision in **Old Chief v United States,** 519 U.S. 172 (1997), most circuits had held that a defendant can prevent the use of uncharged acts to prove a mental element, by offering an explicit stipulation, generally at the outset of the case. For example, in **United States v. Crowder,** 87 F.3d1405 (D.C. Cir.1996)(en banc), the court held that the Trial Judge erred in admitting prior bad act evidence to prove intent and knowledge, notwithstanding the defendant's "unequivocal concession of both intent and knowledge." The majority reasoned that "a defendant's offer to concede knowledge and intent combined with an explicit jury instruction that the Government no longer needs to prove either element gives the Government everything the evidence could show with respect to those two elements, doing so without risk that the jury will use the evidence for impermissible propensity purposes."

But the Crowder result seems to have been rejected in Old Chief. The Court in Old Chief held that under Rule 403, a defendant's stipulation to the felony element in a felon-firearm prosecution rendered the judgement of the predicate conviction inadmissible. However, the Court took pains to emphasize   the prosecution is generally free to prove its case through evidence rather than forced stipulation. And it specifically decalared: "if there were a justification for receiving evidence of the nature of prior acts on some issue other than status (i.e. to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident,' Fed Rule Evid. 404(b), Rule 404(b) guarantees the opportunity to seek its admission." (Emphasis added)

The Old Chief Court distinguished between stipulations to the status elements of a crime, which can be forced upon the prosecution, and stipulations to other elements of a crime, which the prosecution should remain free to reject. The rationale for the distinction is "that proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." In contrast, the intent and knowledge elements go directly to what the defendant was thinking and doing to commit the charged offense; if forced to accept a stipulation on these matters, the prosecution may be hampered in telling the entire story about the defendant's conduct, in a meaningful way to the jury.

It is true that Old Chief is not a Rule 404(b) case. However, the fact that the Court went out of its way to state that the prosecution need not accept a stipulation as to a mental element of a crime, makes it unlikely that a defendant can keep bad acts out of the case by forcing the prosecution to stipulate as to intent or knowledge (as opposed to the status element) of a crime. A further clue is found in the fact that the government filed a petition for certiorari in Chowder, supra, a case in which the D.C. Circuit reversed a conviction when uncharged

misconduct was admitted to prove intent and knowledge, despite the defendant's
offer to stipulate to these elements. The Supreme Court, shortly after
Old Chief was handed down, vacated and remanded Crowder for reconsideration
in light of Old Chief. 136 L.ED. 2nd 708, 117 S.Ct. 760 (1997). This
is at least some indication that the Court intended the Old Chief analysis
(generally permitting the prosecution to reject a proffered stipulation)
to have effect in Rule 404(b) cases. And the D.C. Circuit took the hint
on remand in Crowder, 1998 U.S. Lexis 8345 (D.C. Cir. 1998)(en banc).
The Crowder on remand Court analyzed old Chief and declared: "despite
a defendant's unequivocal offer to stipulate to an element of the offense,
Rule 404(b)does not preclude the government from introducing evidence
to prove that element." The Court reasoned that Old Chief required the
prosecution to accept a stipulation only where the stipulation concerned
the status element of an offense.

## Subsequent acts

Evidence offered under Rule 404(b) is often referred to as evidence
of "prior bad acts". This is somewhat of a misnomer, because it seems
to imply that to be admissible under the Rule, the acts must have preceded
those that are the subject of the lawsuit. Yet, this is not always the
case. For example in **United States v. Ohio,** 69 F.3d 1057 (10th Cir.1995),
the defendant was charged with conspiracy to possess with intent to
distribute 1000 kilograms or more of marijuana. The Trial Court admitted,
as probative of intent, evidence that 185 pounds of marijuana was seized
from the defendant's car more than a year after the charged conspiracy
was terminated. The Court affirmed the defendant's conviction and
stated that "Rule 404(b) does not specifically exclude acts subsequent
to the indictment." The admissibility question was "close" given the
long time between the charged offense and the uncharged misconduct,
but the Court relied on other cases in which "extrinsic evidence separated
by more than a year from the charged conduct has been found probative of inten

It should be noted, however, that a person's bad acts may be more probative of future conduct that past conduct. This is especially true of bad acts offered to prove knowledge. Suppose a defendant is charged with transporting drugs in the back of a moving van in 1991; the drugs were hiden behind furniture. The defendant claims that he thought the van was full of furniture. Evidence that he had transported a similar shipment of furniture and drugs in 1990 is more probative of his knowledge in 1991 than is evidence of drug and furniture transportation in 1992. See the excellent discussion of this issue in **United States v. Latney,** 108 F.3d 1446, 1449-50 (D.C. Cir.1997).

The Court in **United States v. Procopio,** 88 F.3d 21 (1st Cir. 1996), was confronted with this problem of diminished probative value of uncharged misconduct occurring subsequent to the charged activity. The defendants were convicted of armed robbery that was the subject of the trial. The Court held that the evidence was properly admitted for the not-for-character purpose of proving a criminal association between the defendants. The inference of criminal association between the defendants. The inference of criminal association went "somewhat beyond the mere implication that either man was of bad character." The decision of the Trial Judge to admit the evidence was, however, a close one under Rule 403. The "need to reason backward from 1993 to 1991" weakened the probative value of the evidence as to criminal association in the charged case."And here, as is often the case with Rule 404(b) evidence, the permissible inference (Criminal association) overlapped with, and went only a small step beyond, the forbidden one (criminal character). However, because the issue was close, and a reasonable Judge might have decided either way, the Court found no abuse of discretion in admitting the evidence. Still, the government's argument would have been much stronger had the evidence of uncharged misconduct been a criminal association between the defendants that had occurred two years before the crime charged.

### Standard of proof

In the early years of the Federal Rules, many Courts required "clear and convincing evidence" that a criminal defendant committed an uncharged act before proof of the act could be admitted. But the Supreme Court rejected this standard as unduly stringent, and inconsistent with the language of Rule 404(b), in **Huddleston v. United States,** 485 U.S. 681 (1988). Huddleston was charged with selling stolen goods and possessing stolen property, charges relating to video cassette tapes. To prove the defendant's knowledge that the items were stolen, the government offered evidence concerning Huddelston's previous offer to sell new black and white Television sets and a large quantity of home appliances. Huddleston challenged the admission of the evidence concerning the televisions, because the government's proof that these items were stolen was based solely upon the defendant's failure to produce a bill of sale and their low selling price.

The defendant in Huddleston argued that the evidence could not have been properly admitted unless the Trial Judge found by at least a preponderance of the evidence that the sets were stolen. The Supreme Court however, unanimously rejected the argument. Chief Justice Rehnquist's opinion for the Court reasoned that when evidence is offered for a proper purpose under Rule 404(b), "the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403." The Chief Justice wrote that no preliminary finding under Rule 104(a) is required when other act evidence is offered. Rather, the question of whether the defendant had committed the bad act was simply one of conditional relevancy....the relevancy of the bad act is conditioned on the defendant's having committed it. Questions of conditional relevancy are governed by Rule 104(b), under which the evidence is admitted if the proponent establishes enough evidence to support a finding of the conditional fact.

## Summary Of Argument

It is clear, that (if) the Petitioners defense counsel would have filed the proper Per Trial motions to limit the Hearsay Evidence, pursuant to 404(b), the outcome of the proceedings would have been completely different.


Date  10-9-09

Respectfully,

Jesus Alfonso-Legarda
Reg. NO. 09532-091
Federal Correctional
Institution Englewood
9595 West Quincy Ave.
Littleton, CO 80123

In the instant case at bar, the Court and defense counsel failed egregiously by not requiring an evaluation of the Petitioner. The Petitioner rigoriously informed his defense counsel of his medical condition. The Petitioner informed his counsel of the following.

(A)    The Petitioner was being treated by a psychiatrist for approximately (1) year prior to his arrest.

(B)    The Petitioner has memory loss.

(C)    The Petitioner has suffered seizures well prior to his arrest, during his incarceration and on going since childhood, and needs surgery in order to alleviate the seizures.

(D)    Petitioner is entitiled to a downward departure due to diminished capacity.

## Ground Four

Failure To File Pre Trial Motion For Evaluation

Pursuant To Rule 702 For Expert Witness

**RULE 702.  Testimony by Experts**

If scientific, technical, or other specialized knowledge will assist

the trier of fact to understand the evidence or to determine a fact

in issue, a witness qualified as an expert by knowledge, skill, experince,

training, or education, may testify thereto in the form of an opinion

or otherwise, if (1) the testimony is based upon sufficient facts

or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods

reliably to the facts of the case. (Jan.2, 1975, P.L. 93-595, § 1,

88 Stat. 1937; Dec. 1, 2000.)

**Medical and health matters**

   To be considered reliable under Daubert standard, expert medical

witness does not have to demonstrate familiarity with accepted medical

literature or published standards in other areas of specialization

in order to testify as to standards of care applicable to those areas:

(1) concern with keeping courtroom door closed to junk science is

not served by excluding testimony that is supported by extensive relevant

experince; (2) medical expert's extensive experince in other areas

of specialization is generally sufficient to render his or her testimony

reliable at to those areas under Fed. R. Evid. 702; and (3) there

is no requirement that medical expert must cite published studies

in order to reliably conclude that particular object or set of circumstances

caused particular illness or medical condition, and any lack of textual support goes to weight, not admissibilty, of expert's testimony. **Dickison v. Cardiac & Thoracic Surgery of E. Tenn. P.C.,** (2004, CA6 Tenn) 388 F3d 976, cert den (2005) 544 US 961, 125 S Ct 1731, 161 L Ed 2d 602 and cert den (2005) 544 US 961, 125 S Ct 1731, 161 L Ed 2d 602.

## SUMMARY

In the instant case at bar, the Petitioner avers, that due to the Court and Defense Counsel failing to get the required evaluation, the Petitioners guilty plea was NOT "Knowingly and Intellegently" entered into by the Petitioner. Thus, due to the Petitioners medical condition, the guilty plea should be rendered invalid. Thus, the Court should vacate and set aside the conviction.

Date 10-9-09

Respectfully Submitted,

Jesus A Legarda

Jesus Alfonso-Legarda
Reg. No. 09531-091
Federal Correctional
Institution Englewood
9595 West Quincy Ave.
Littleton, CO 80123

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

(WYOMING)

| | | |
|---|---|---|
| Alfonso Jesus-Legarda,<br>    Petitioner, | ( | Criminal Case<br>NO. 05-CR-104-WJD |
| | ( | |
| | ( | |
| | ( | |
| | ( | |
| v. | ( | |
| | ( | |
| | ( | |
| | ( | |
| | ( | |
| United States of America,<br>    Respondent, | ( | Judge Downes |
| | ( | |

## Relief Requested

1.    The Petitioners sentence vacated and set aside, for the consitutional violations to the Petitioner.

2.    In the alternative, a new trial proceeding or correction of the sentence.

3.    Appointment of counsel, pursuant to 18 U.S.C. 3006(A).

Date 10-9-09

Respectfully Submitted,

Alfonso Jesus-Legarda
Reg. No. 09531-091
Federal Correctional
Institution Englewood
9595 West Quincy Ave.
Littleton, CO 80123

---

**EXHIBIT (A)**

True And Attest Copy Of

Petitioners Dismissal Of Appeal

---

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT
Office of the Clerk
Byron White United States Courthouse
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                                        Douglas E. Cressler
Clerk of Court                                                               Chief Deputy Clerk

August 6, 2009

Alfonso Jesus Legarda, #09532-091
Federal Correctional Institution
9595 West Quincy Avenue
Littleton, CO 80123

    RE:  08-8038, United States v. Legarda

Dear Mr. Legarda:

On August 5, 2009, the court received your "Motion to File" in which you request an
additional 90 days to file a brief in response to your attorney's *Anders* brief. Your motion
will not be acted upon.  On July 27, 2009, the court dismissed your appeal and granted
your attorney's motion to withdraw.

If you wish to request rehearing, we direct your attention to the requirements of Fed. R.
App. P. 40, including its requirement that a petition for rehearing be filed within 14 days
after entry of the order or judgment.

An additional copy of this court's July 27, 2009 decision is enclosed for your information.

                Very truly yours,

                ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

July 27, 2009

**UNITED STATES COURT OF APPEALS**

Elisabeth A. Shumaker
Clerk of Court

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

JESUS ALFONSO LEGARDA,

  Defendant-Appellant.

|

No. 08-8038

(D. Wyoming)

(No. 2:05-CR-00104-WFD-1)

---

**ORDER AND JUDGMENT**[1]

---

Before **HENRY**, Chief Judge, **PORFILIO** and **BRORBY**, Circuit Judges.

---

Jesus Alfonso Legarda pleaded guilty to one count of conspiracy to possess with intent to distribute, and to distribute, methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. The district court imposed a sentence within the advisory guidelines range of 210 months' imprisonment.

Mr. Legarda now appeals. His counsel, in turn, filed a motion to withdraw pursuant to *Anders v. California,* 386 U.S. 738 (1967), based on

---

[1] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his belief that the grounds for appeal are frivolous. Finding no non-frivolous issues in this appeal, we agree and therefore grant Mr. Legarda's counsel's request to withdraw and dismiss the appeal.

## I. BACKGROUND

On May 19, 2005, a federal grand jury returned a five-count indictment charging Mr. Legarda with offenses concerning the distribution of methamphetamine and possession of a firearm. Mr. Legarda entered into a plea agreement and pleaded guilty to Count 1 of the indictment, which alleged "Conspiracy to Possess with Intent to Distribute, and to Distribute, Methamphetamine" in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. In turn, the government agreed to (1) recommend a three-level reduction in Mr. Legarda's offense level for his acceptance of responsibility under U.S.S.G. § 3E1.1(a); (2) refrain from opposing Mr. Legarda's request for a designation to a Bureau of Prisons facility located closest to his family;[2] and (3) recommend a sentence at the low end of the applicable guidelines range.

Based upon the parties' stipulation that Mr. Legarda's relevant conduct involved at least 1.5 kilograms but less than 5 kilograms of

_____

[2] Why the government would ever oppose such a request is unclear.

-2-

methamphetamine, the district court calculated Mr. Legarda's total offense

level to be 36 with a criminal history category of I. As such, the district

court imposed a sentence of 210-months' imprisonment–in the middle of the

advisory guidelines range of 188 to 230 months of imprisonment. The court

also imposed five years' supervised release, a $1,000.00 fine, and a

mandatory special assessment fee of $100.00.

## II. DISCUSSION

In *Anders*, the Supreme Court held that if a defendant's counsel "finds

[the defendant's] case to be wholly frivolous, after a conscientious

examination of it, he should so advise the court and request permission to

withdraw." 386 U.S. at 744. Counsel must submit to both the court and his

client a "brief referring to anything in the record that might arguably

support the appeal." *Id.* The defendant may then "raise any points that he

chooses." *Id.*

We, as the reviewing court, must examine all the proceedings to

determine whether the appeal is frivolous. *Id.* If we agree the appeal is

frivolous, we "may grant counsel's request to withdraw and dismiss the

appeal." *Id.* "On the other hand, if [we] find[] any of the legal points

arguable on their merits (and therefore not frivolous) [we] must, prior to

decision, afford the [defendant] the assistance of counsel to argue the
appeal." *Id.*

Mr. Legarda's counsel reports that his client seeks to challenge the
district court's sentence, despite advice that there were not any non-
frivolous issues to be raised. Counsel further notes that Mr. Legarda
voluntarily waived his right to appeal in his guilty plea. Aplt's Br. at 2. Mr.
Legarda's counsel served his *Anders* brief upon Mr. Legarda, and we
afforded him an opportunity to submit arguments in response, which he
opted not to file. The government has declined to file an answer brief.

This appeal could conceivably have merit only if Mr. Legarda's guilty
plea was involuntary or otherwise invalid. After fully examining the record,
we agree with counsel that there is no basis in law or fact for either of these
arguments.

In particular, the plea transcript indicates that Mr. Legarda entered his
plea knowingly, intelligently, and voluntarily pursuant to the requirements
of Rule 11 of the Federal Rules of Criminal Procedure. During the plea
colloquy prior to the entry of his guilty plea, the court specifically
established that Mr. Legarda was competent, that he was satisfied with his
counsel, that he was pleading without coercion, that he was aware of the
charges against him and the range of punishment, and that he knew what

-4-

trial rights he waived by pleading guilty.

### III. CONCLUSION

Having concluded that there is no non-frivolous ground in the record on which to appeal Mr. Legarda's conviction and sentence, we GRANT Mr. Legarda's counsel's request to withdraw and DISMISS the appeal.

Entered for the Court,

Robert H. Henry
Chief Judge

-5-

CERTIFICATE OF SERVICE

I hereby certify that on this __9__ day of __October__ , 2009

a true and accurate copy of the foregoing was mailed,

first class postage pre-paid, addressed as follows:

TO: Clerk of Court
    Ewing T. Kerr Building and
    United States Courthouse
    1st Floor
    111 South Wolcott Street
    Casper, WY 82601


TO: Judge Downes                    BY: Jesus Alfonse Legarda
    Ewing T. Kerr Building and          Reg. No. 09531-091
    United States Courthouse            F.C.I. Englewood
    1st Floor
    111 South Wolcott Street            9595 W. Quincy Ave.
    Casper, WY 82601
                                        Littleton, Colorado

TO:                                                        80123


## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the movant in the above action, that he/she has read the above pleading and that the information contained therein is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at __Littleton, CO__ on __10-9-09__ .
           (Location)              (Date)


                              _Jesus A. Legarda_
                              Movant's Original Signature